General Sales Corporation v. Commissioner.
General Sales Corp. v. Commissioner
Docket No. 108603.
United States Tax Court
1942 Tax Ct. Memo LEXIS 13; 1 T.C.M. (CCH) 285; T.C.M. (RIA) 42678; 12/23/1942
*13 Clarence H. Desky, Esq., for the petitioner. Arthur L. Murray, Esq., for the respondent. MELLOTT
Memorandum Findings of Fact and Opinion MELLOTT, Judge: The Commissioner determined a deficiency in petitioner's income tax for the calendar year 1939 in the amount of $97.45. The sole adjustment was the disallowance of a claimed deduction of $3,315.94 as a "bad debt" and the claim that the disallowance was improper presents the only issue. Findings of Fact Petitioner is a corporation duly organized under the laws of the State of California having its principal office in the city of San Francisco in said state. Its return for the calendar year 1939 was duly filed with the collector of internal revenue at said city, reporting no net income, but a loss of $2,536.38. For approximately 40 years petitioner has been engaged in the general business of selling washing machines and kindred property. One of its customers was L. C. Pemberton, who carried on the business of selling washers under the trade name "Washer Wilson" in the cities of Los Angeles, Bakersfield and Santa Ana, all in California. Chas. B. Taylor was his representative in Los Angeles, Jefferson K. Whitelaw in Bakersfield and *14 F. C. Ribera in Santa Ana. During 1935 petitioner delivered to "Washer Wilson" at Los Angeles merchandise having an agreed value of $1,881.11, passing title to it and accepting various "Trade Acceptances" aggregating that amount, signed by Taylor as acceptor and endorsed by Pemberton as follows: For value received, I hereby guarantee the payment of this acceptance or bill of exchange, with all costs of collection thereof, including reasonable attorney's fees in any action on said acceptance or bill of exchange or on this guaranty and authorize extension of time to drawer, acceptor and/or drawee without notice to me and same shall not effect my liability. Demand, presentment for payment, notice of non-payment and protest waived. During the same year and under similar circumstances "Trade Acceptance" aggregating $663.43 signed by Jefferson K. Whitelaw and "Trade Acceptances" aggregating $771.40 signed by F. C. Ribera, bearing similar endorsements by Pemberton were received by petitioner. Notwithstanding the form of the above transactions Pemberton was, and was considered to be, the debtor. The trade acceptances were deposited by petitioner with its bank - the deposit probably amounting *15 to no more than a deposit for collection since they were considered by petitioner to be no more than "a short term note; like a post-dated check" - but were not paid when due. The aggregate of the amounts shown above was carried on petitioner's books as an account receivable. Some of the trade acceptances were dishonored in 1935 and some of them were dishonored in 1936. Thereafter all merchandise shipped by petitioner to Pemberton was C.O.D. Pemberton or "Washer Wilson" continued in business, though the volume of business transacted by him became relatively small. He was not declared a bankrupt, no insolvency proceedings were instituted against him, nor did he make any assignment for the benefit of his creditors. An official of the company, however, did at one time advise the internal revenue department - prior to the mailing of the notice of deficiency - that Pemberton had gone "into the Board of Trade and through bankruptcy." This statement was incorrect and the officer writing the letter did not know the true facts. Numerous efforts to collect from Pemberton were made by petitioner during 1936, 1937 and 1938 and its president felt, even until the date of the hearing, that he *16 would pay the account if he could. In 1939 petitioner concluded that the account was worthless and it was charged off. The Commissioner held that "no identifiable event occurred in the year 1939 which rendered said acceptance worthless during 1939, hence the resulting bad debt deduction is disallowed * * *." The debt became worthless in 1939, was ascertained to be worthless in that year and was properly charged off in petitioner's books of account. Opinion Under section 23(k) of the Revenue Act of 1938 "debts ascertained to be worthless and charged off within the taxable year" were deductible from gross income. Section 124 of the Revenue Act of 1942 amended, limiting the deduction to "debts which become worthless within the taxable year." The amendment is made effective with respect to taxable years beginning after December 31, 1938; so, irrespective of the fact that the issues were framed to present only the question whether the debts in question were properly ascertained to be worthless and charged off within the taxable year, we assume, for present purposes, that it must also be determined whether they became worthless in 1939. This question has been resolved in petitioner's *17 favor. It would serve no useful purpose to attempt to make a complete review of all the evidence. Respondent was clearly justified in putting petitioner to its proof, especially in view of the fact that one of its officers had written him a letter stating categorically, as set out in our findings, that the debtor had gone "into the Board of Trade and through bankruptcy." Reference to the Board of Trade seems to have meant an assignment for the benefit of creditors. But the officer who wrote the letter did not know the real facts. It is unfortunate to say the least - perhaps even reprehensible - that such a representation should be made; but the evidence convinces us that it was incorrect and we have so found. Petitioner's president, who seems to have had the most contact and familiarity with this particular account and debtor, testified: "Nothing like that ever happened here." We have therefore concluded that the debt did not become worthless in 1936. Reviewing the other evidence briefly we find a rather common situation - a debtor, willing but unable to pay and a creditor hopeful that the debtor may become able to pay. During the next two years letters are sent to him frequently, *18 urging that he take up some of the trade acceptances. The sales organization also urges that he make a diligent effort to have his credit restored so that his current purchases may be other than C.O.D. The efforts are unavailing and no payments are made. Finally, in 1939, the creditor "Thought it was about time to wipe it off the books" - concluded that its officers hadn't been very good "business men to let the thing run as long as we did" - and charged it off on its books "with all good intentions." At the close of the hearing opinion was expressed that the debt had been properly ascertained to be worthless and charged off. The record and the authorities cited, as well as the memorandum brief filed by the respondent, have all been carefully examined and finding has now been made that the debt became worthless in 1939. That is dispositive of the present controversy. There is no evidence justifying a conclusion that petitioner deliberately carried the account on its books for several years after it had become worthless, as was done in Clara B. Parker, 30 B.T.A. 1231, cited by respondent; and if more of an "identifiable event" is required - bankruptcy *19 of the debtor, assignment for the benefit of creditors, failing of the bar of the statute of limitations, to mention a few - then it would seem that petitioner was premature, rather than tardy as urged by respondent, in taking its deduction. The question need not be labored at greater length. We are of the opinion and hold that respondent erred in denying the claimed deduction. Decision will be entered for the petitioner.